**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ADAM CHAPA,           ) | |
|     ID # 1329285,           ) | |
|         Petitioner,           ) | |
| vs.           ) | No. 3:11-CV-0007-P (BH) |
|                   ) | |
| RICK THALER, Director,           ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal           ) | |
| Justice, Correctional Institutions Division,           ) | |
|         Respondent.           ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3-251, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the habeas corpus petition should be **DENIED** with prejudice.

**I.  BACKGROUND**

On January 3, 2011, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for murder in cause F04-35376-Q. Respondent is Rick Thaler, Director of TDCJ-CID.

**A.  Factual and Procedural History**

On August 5, 2004, the State indicted petitioner for the capital murder of David Holloway on or about June 30, 2004. (Clerk's Record ("C.R."):2-3). He pleaded not guilty and was tried before a jury on August 17-24, 2005. (C.R.:4-5).

At trial, the evidence showed that at approximately 1:20 a.m. on June 30, 2004, Irving police attempted to pull over a tan Toyota Camry without taillights. During the ensuing chase, which did not end until the Camry ran over spikes laid by the police in Dallas, the officer saw items being thrown out of the passenger window. (R. 4:104-11, 114). Also during the chase, a Dallas police

officer riding in a police helicopter witnessed the passenger in the car throw something in the backseat of the car and light the car on fire while it was still moving. Because a blue flame streaked across the seat, the officer believed that a flammable substance had been put on the seat and that the passenger had intentionally set the backseat on fire. (R. 4:160-66). By the time the car stopped, it was engulfed in flames. Both the driver and the passenger (petitioner) exited the car and were arrested. The driver had $118.00. (R. 5:140). Petitioner was carrying a knife, a brown wallet, and a black wallet in his pockets that was subsequently identified as belonging to the murder victim. (R. 4:; R. 5:135-36). When booking him into jail, a police officer noticed that petitioner's shirt was turned inside out and that there were red splotches on his tennis shoes that looked like blood. (R. 5:12-6). A burned knife was later found in the Camry. (R. 5:129).

At approximately 3:20 a.m. that same morning, an Irving city maintenance worker noticed a man who appeared to be asleep in a porta-potty at an Irving city park. He called the police, who determined that the man was dead. An autopsy determined that he died of three gunshots to the face, back of the head, and neck, and stab wounds to the neck. (R. 6:169, 172-73, 186). The bullet fragments found in his body were consistent with a .38 caliber bullet, and wadding found in his neck was consistent with a .410 shotgun shell. (R. 6:39, 42). A footprint found inside of the porta-potty matched the Camry driver's shoe, and bloodstains on his shoes, shirt, jeans, and ring also matched victim's DNA; the bloodstains on petitioner's shoes and shorts also matched the victim's DNA. (R. 6:10, 92-95, 99). The blood stains on petitioner's shoes and shorts were high velocity blood spatter, found when someone is shot. (R. 6:69, 70-72). The victim's pant pockets were turned out, and change was found on the ground near the body. A pair of cut-off grey sweat-shorts were found at the park near the porta-potty. (R. 5:104, 107-08, 130).

The victim's friend, Charles Moore, testified that both he and the victim occasionally did work at Reeves Plumbing Company, which was owned by Larry Reeves, that Reeves sold drugs at his company, that he seen Reeves and the victim do drugs together, and that Reeves and Holloway were friends who frequently argued. (R. 4:19-23, 31). Moore further testified that he saw the victim two days before his death, that the victim was dressed well and in love with a prostitute who had worked for Reeves, that the victim was carrying his brown wallet at the time, and that he said he was going to turn himself in to the Farmers Branch police for a number of outstanding tickets. (R. 4:24-25, 79). The next day, Reeves called Moore about working on a motorcycle he had bought. Moore met Reeves on a local street corner, and Reeves drove up in a van driven by petitioner. Moore had seen petitioner before briefly, but this time petitioner introduced himself as Adam Chapa. When Moore joked to Reeves that the victim was going to turn Reeves in, Reeves looked surprised. Petitioner showed .38 revolver and a cane sword, stating that he would "take care of" the victim. During this same conversation, Reeves stated that he was planning on driving the victim to the police station so that he could turn himself in. (R. 4:25-34). The victim was booked into the Farmers Branch jail at 3:49 p.m. on June 29, 2004, but was released at 8:55 p.m. after he complained of chest pains; he was carrying $103.04. (R. 4:85-90).

Petitioner testified at his trial and denied participating in the murder. He testified that at approximately 10:00 p.m. on June 29, 2004, he was at his apartment with his girlfriend and other friends when the Camry driver arrived to discuss some tile work petitioner had done for him. Petitioner knew the driver through Johnny Adames, who was at petitioner's apartment at the time, and who looks like petitioner. Petitioner denied ever having met the victim. (R. 7:11-14). Petitioner testified that he left his apartment with the driver and Adames in a tan Camry wearing

3

only grey sweat-shorts and no shoes to buy some beer. The driver took them to Reeves Plumbing, where he and Adames got out of the car and went in. The driver came back, breathing heavily, and got into the car and backed it to the door of the building. Petitioner got out, saw him put some clothes in the trunk, and saw Reeves and Adames get in a van. The driver and petitioner followed the van in the Camry to the Irving park. (R. 7:16-23). During the ride, the driver told petitioner that the victim had been killed, and when they got there, told petitioner to help him with the body. Petitioner helped get the body out of the trunk, but then let go. He took the victim's wallet from the driver, dug through the victim's pockets, and changed into the clothes in the trunk when he noticed that his had blood on them. (R. 7:23-30). The driver and petitioner were following the van in the Camry when the police chase began. He told the driver he was going to tell the police what happened, and the driver threatened him and set the car on fire. Petitioner denied having the victim's wallet or a knife when arrested, denied owning a .38 caliber gun, denied ever meeting Charles Moore or threatening the victim, and denied setting the car on fire. (R. 7:33-37, 61-64).

The jury convicted petitioner of the lesser-included offense of murder, enhanced by two prior felony convictions, and he was sentenced to seventy-five years imprisonment. (*Id*. at 4-5, 85). On direct appeal, he alleged that the evidence was legally and factually insufficient to support his conviction, that the State failed to prove that the grand jury used due diligence to identify the murder weapon, and that the trial court erred in denying a motion for mistrial on two separate occasions during trial. Petitioner's conviction was affirmed on direct appeal, and his petition for discretionary review was refused on April 18, 2007. *See Chapa v. State*, 2006 WL 3259331, No. 05-05-01359-CR (Tex. App.–Dallas, Nov. 13, 2006, pet. ref'd); PD-1896-06.

Petitioner filed a state habeas application on July 14, 2008, raising the four claims of

4

ineffective assistance he raises in his federal petition. (State Habeas Transcript "S.H.Tr." at 7-11). On January 30, 2009, the state habeas court conducted an evidentiary hearing with regard to claims of ineffective assistance of trial counsel, and on March 9, 2010, issued findings recommending that relief be denied. (*Id*. at 120-45). On November 24, 2010, the Texas Court of Criminal Appeals denied his state application on its merits without a written order based on the trial court's findings. *See Ex parte Chapa*, WR-73,663-01 (Tex. Crim. App. Nov. 24, 2010). While his state habeas application was pending, petitioner filed a motion for post-trial DNA testing in the state trial court pursuant to Article 64.01 of the Texas Code of Criminal Procedure that is still pending before the trial court. (Doc. 18, Ex. A).

**B.     Substantive Claims**

On January 3, 2011, petitioner filed his petition for federal habeas relief ("Pet.") and a memorandum in support ("Mem."). He raises the following grounds for relief:

(1) the evidence is legally insufficient to support his murder conviction (ground six);

(2) his trial attorney rendered ineffective assistance of counsel by:

-failing to make an offer of proof regarding excluded testimony(ground one);

-failing to call material witnesses (grounds three and four);

-committing cumulative errors sufficient to undermine confidence in the verdict (ground five); and

(3) his appellate attorney rendered ineffective assistance of counsel by failing to raise as an issue on appeal testimony excluded at trial.

(Pet. at 7-8A). Respondent filed a response on May 19, 2011, and provided the state court records.[1]

---

[1] Respondent initially contended that petitioner's federal petition was barred by the statute of limitations but later conceded that it is not because his pending state motion for DNA testing tolls the one-year statutory time limit under *Hutson v. Quarterman*, 508 F.3d 236, 240 (5th Cir. 2007). (*See* doc. 18 at 7-9).

Petitioner filed reply briefs on June 6 and July 8, 2011.

## II. EXHAUSTION

Respondent contends that petitioner has failed to exhaust his sixth ground for relief, the legally sufficiency claim, because he did not raise it before the Court of Criminal Appeals in either his PDR or his state habeas application, and that it is procedurally barred. He also argues that the claim lacks merit. Because it appears that petitioner is entitled to no habeas relief on the allegedly unexhausted claim, the Court bypasses the procedural issue and proceeds to the merits of the claim. *See* 28 U.S.C. § 2254(b)(2) (providing that the Court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Logan-Gates v. Quarterman*, No. 3:08-CV-1683-B, 2009 WL 3614481, slip op. at *7 (N.D. Tex. Oct. 29, 2009) (recognizing that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar).

## III. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

6

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## IV. SUFFICIENCY OF THE EVIDENCE

In his sixth ground for relief, petitioner asserts that the evidence is insufficient to support his murder conviction.  He claims that the evidence established that the victim was murdered prior to his involvement, and that the only evidence tying him to the murder was blood on the clothing he was wearing that he retrieved from the trunk of the car.  (Pet. at 8A; Mem. at 45-47).

In *Jackson v. Virginia,* 443 U.S. 307, 320 (1979), the United States Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id.*

Petitioner in essence points to his testimony that he only helped dispose of the body, put the bloody clothes on after the fact, did not light the car on fire, and never previously threatened the victim.  The jury, as the fact-finder, was responsible for weighing the evidence and resolving conflicts in testimony, and a court cannot substitute its view of the evidence for that of the fact-finder.  *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).  The jury heard evidence that petitioner had previously threatened the victim while in possession of the same caliber weapon with which the victim was later killed, that petitioner set the car he was riding in during a police chase on fire, that he had the victim's wallet in his possession when arrested, and that he was wearing clothing when he was arrested with high-velocity blood spatter on it that matched the victim's DNA.  Viewed in the light most favorable to the prosecution, there was sufficient evidence presented at trial

8

from which any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. Petitioner's sixth ground for relief is without merit and should be denied.

## V.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his first and third through fifth grounds for relief, petitioner asserts that his trial counsel provided ineffective assistance.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

9

**A.     Offer of Proof**

In his first ground for relief, petitioner claims that his trial attorney failed to make an offer of proof at trial for testimony that was excluded after the State objected.  After defense counsel asked petitioner what others had said to him the night that the victim was murdered, the prosecutor's hearsay objections to these questions were sustained. (R. 7:22-27, 29, 33, 40).  Petitioner contends that the failure to make an offer of proof for his answers to these questions prevented him from arguing on direct appeal that it was error to exclude this evidence because it supported a defense of duress. (Pet. at 7; Mem. at 19-22, 24-26).

During the state habeas proceedings, the trial court held an evidentiary hearing on petitioner's claims of ineffective assistance.  Trial counsel testified at the hearing that duress was not the defense he pursued at trial; he argued that petitioner did not participate in the murder at all.  Counsel testified that he had two reasons for attempting to elicit testimony about what others had said to petitioner.  First, he wanted to try to explain that petitioner did not tell the police when he was arrested that he helped move the body because he had been threatened.  Second, the testimony would have shown that petitioner was being directed as to what should be done with the body. (State Habeas Evidentiary Hearing ("S.H.E.H.") at 13-17).  Counsel further testified that while he did not make an offer of proof for the excluded testimony, in his experience the prosecutor trying the case would question petitioner in such a manner that would elicit the testimony about threats.  When the prosecutor did ask petitioner about the threats, petitioner was able to testify about them, and there was no need to make an offer of proof. (*Id*. at 22-23).

The state habeas court made findings that despite the fact that the trial court sustained objections to certain testimony, petitioner did testify at trial that the driver threatened him, that defense counsel made a strategic decision not to make an offer of proof, and that petitioner had failed to show that the excluded testimony was any different than the testimony he actually gave.  The state court therefore concluded that petitioner had not proven that counsel was ineffective for failing to make an offer of proof because counsel was not ineffective and because petitioner had

failed to show that there was a reasonable probability that his conviction would have been overturned if this issue been raised on appeal. (S.H.Tr.:130-34).

This is not an unreasonable application of the *Strickland* standard. If counsel has made an adequate investigation, an informed decision made based on trial strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness." *United States v. Cotton*, 343 F.3d 746, 753 (5th Cir. 2003), *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). Counsel explained at the evidentiary hearing that he did not present a defense of duress at trial. Under Texas law, it is an affirmative defense to prosecution that a defendant engaged in the proscribed conduct only because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another. TEX. PENAL CODE ANN.§ 8.05(a) (West 1994). Petitioner never contended that he committed murder, or capital murder as he was charged, because he was threatened with imminent death or serious bodily injury. Petitioner maintained that he did not participate in any way in the murder and instead only helped to move the body after the fact. Duress therefore was not a viable affirmative defense. Furthermore, petitioner was permitted to testify at trial about threats that were allegedly made to him. On cross-examination, the prosecutor questioned petitioner about statements he made to the police and the fact that he never told the police that the others threatened him. Petitioner testified that he and his family were threatened and that he was in fear of those threats when he was interviewed by the police. (R. 7:52-54). Petitioner has therefore not shown that trial counsel was ineffective for failing to make an offer of proof with regard to testimony that was already admitted at trial. This ground for relief is without merit.

**B.     Failure to Call Witnesses**

In his third and fourth grounds for relief, petitioner asserts that his trial counsel was ineffective for failing to call two witnesses at trial. In his third ground for relief, petitioner asserts that counsel was ineffective for failing to call an inmate of the Dallas County jail to whom the driver

11

allegedly admitted starting the fire in the car.  In his fourth ground for relief, petitioner asserts that counsel was ineffective for failing to call his girlfriend to corroborate his testimony that he was only wearing grey shorts with no shoes, rather than the clothes he was wearing when arrested, when he left his apartment with the driver.

At the state habeas hearing, counsel testified that he spoke to the inmate's attorney prior to trial about a letter the inmate had written to the police stating that the driver had confessed that he set the car on fire.  He did not call the inmate to testify because he had information that he was a jailhouse snitch with an extensive criminal history, and his attorney told him that the letter was not the entirety of the inmate's testimony.  Counsel therefore made the decision not to call a witness that might have credibility issues and might ultimately testify to something that would harm the defense. (S.H.E.H.:24-25).  The inmate did not testify at the evidentiary hearing.

Counsel also testified at the hearing that he did not call petitioner's girlfriend to testify as to what petitioner was wearing when he left their apartment because she initially told the police that petitioner was wearing jeans, she had a criminal record, there was some evidence that she had a romantic relationship with Johnny Adames while petitioner was incarcerated, and she had been the victim in previous assaults of which petitioner had been convicted.  Counsel discussed with petitioner his concerns and made the decision not to call her as a witness.  (*Id*. at 26-32).  The girlfriend testified at the hearing that petitioner was wearing grey shorts when he left their apartment, that she did not tell the police that he was wearing jeans that night, and that she would have testified to this if called as witness at trial. (S.H.E.H.:84-86).  She testified that petitioner had been charged with domestic violence against her many years before, that she did not recall whether he was convicted, and that she had previously been convicted of drug possession, theft, and forgery. (S.H.E.H.:87, 96-97).

The state habeas court made findings that petitioner had not shown that the inmate would have been willing to testify at his trial, that counsel made the reasonable strategic decisions not to call the inmate or girlfriend as witnesses, and that petitioner had failed to prove ineffective

assistance of counsel. (S.H.Tr.:134-43). This is not an unreasonable application of the *Strickland* standard.

The Fifth Circuit has held that complaints of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009). To prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F3d at 538; *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Petitioner has not shown that the inmate was available and willing to testify at his trial. Furthermore, he has not shown that his testimony would have been favorable to the defense. While he may have testified that the driver admitted to starting the car fire, counsel testified at the evidentiary hearing that he actually spoke to the inmate's attorney and became concerned about the nature of his testimony. Even if the inmate had testified, his testimony would not have called into question the other evidence supporting petitioner's guilt. Based on his criminal history and potential testimony, counsel made the reasonable trial strategy not to call the inmate as a witness, and petitioner has shown neither deficient representation not prejudice.

Similarly, while the girlfriend was willing to testify at trial, her testimony would have differed from the statement she gave the police, she was an admitted felon with several criminal convictions, and she had a history of domestic violence with petitioner. Counsel therefore made the reasonable trial strategy not to call her as a witness, and petitioner has failed to show either that this was deficient representation or that her testimony would have benefitted the defense. Petitioner's third and fourth grounds for relief are without merit.

**C.**     **Cumulative Errors**

In his fifth ground for relief, petitioner asserts that the cumulative effect of his attorney's

errors were sufficient to undermine confidence in the jury's verdict. (Pet. at 8A). In *Derden v. McNeel*, 978 F.2d 1453 (5th Cir. 1992), the Fifth Circuit held that in order for a federal habeas petitioner to prevail on a claim of cumulative error at a state trial, he must establish that: 1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; 2) the errors were not procedurally defaulted for habeas purposes; and 3) the constitutional errors so infected the entire trial that the resulting conviction violates due process. *Id.* at 1458. Petitioner's ineffective assistance of trial counsel claims are without merit and therefore do not establish any constitutional errors that infected the trial such that his conviction and sentence violate his due process rights. This ground is also without merit.

## VI. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Finally, petitioner asserts in his second ground for relief that his appellate counsel was ineffective for failing to raise as a point of error on appeal that the trial court had erred in sustaining hearsay objections to petitioner's testimony about threats against him after the murder. (Pet. at 7).

The federal constitution guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention."

*Williamson*, 183 F.3d at 462-63 (footnote and citations omitted).  To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

As noted, petitioner did testify at trial that he was threatened by others not to tell the police what happened to the victim.  Even if the trial court did err in sustaining objections to this testimony, petitioner has not shown that this was a meritorious claim that should have been raised on appeal.  The state habeas court denied this claim at the state level (S.H.Tr.:24), and petitioner has not shown that this denial is contrary to federal law.  *See United States v. Phillips*, 210 F.3d at 348 (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal).  Petitioner's fifth ground for relief is without merit.

## VII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VIII.  RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SIGNED on this 4th day of November, 2011.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

    A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE